UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUSTIN MAHWIKIZI, | |
| Plaintiff, | |
| v. | No. 21 CV 3467 |
| CENTERS FOR DISEASE CONTROL & PREVENTION, DEPARTMENT OF HEALTH & HUMAN SERVICES, JAY ROBERT PRITZKER, in his official capacity as Governor of Illinois, ILLINOIS DEPARTMENT OF PUBLIC HEALTH, | Judge Manish S. Shah |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Justin Mahwikizi, a Catholic rideshare driver, brings suit against the federal government and the state government, alleging that the Centers for Disease Control's requirement that people wear masks on public transportation violates his First Amendment Free Exercise and Free Speech rights by preventing him from following the teachings of the biblical Good Samaritan. The State of Illinois did not issue this mask mandate, but Mahwikizi is suing it (in addition to the federal government) because, he says, it is enforcing the federal mandate. Mahwikizi requests a temporary restraining order and preliminary injunction on enforcement of the mask mandate. The state moved to dismiss the complaint, and the federal government opposes the motion for an injunction.

The state's motion to dismiss is granted, and the motion for a temporary restraining order is denied.

## I.    Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim over which it lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A defendant can challenge subject-matter jurisdiction with either a facial attack or a factual attack. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). A facial attack tests whether the allegations, taken as true, support an inference that subject-matter jurisdiction exists. *Id.* A factual attack, however, challenges the plaintiff's underlying jurisdictional allegations. *Id.* A court lacks subject-matter jurisdiction if a plaintiff doesn't have standing. *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). To establish standing, "a plaintiff must show (1) [he] has suffered an 'injury in fact' … (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

The standards for issuing a temporary restraining order and a preliminary injunction are identical. *Mays v. Dart*, 453 F.Supp. 3d 1074, 1087 (N.D. Ill. 2020). A preliminary injunction—and, by extension, a temporary restraining order—is "an extraordinary remedy never awarded as of right." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a TRO or preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See Protect*

*Our Parks, Inc. v. Buttigieg*, 10 F.4th 758, 763 (7th Cir. 2021) (quoting *Winter*, 555 U.S. at 20). Although a plaintiff doesn't need to show that he will definitely win the case on the merits, a "mere possibility of success is not enough." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020); *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020) (plaintiff must demonstrate some likelihood of success on the merits).

## II. Facts

In January 2021, the Centers for Disease Control and Prevention issued an order, effective February 1, 2021, requiring people to wear masks while on "conveyances" and at transportation hubs and requiring conveyances to transport only people who are wearing masks. [20-2] at 1–2.[1] The order is supposed to help "preserv[e] … human life," "maintain[] a safe and secure operating transportation system," "mitigat[e] the further introduction, transmission, and spread of COVID-19 … from one state or territory into any other state or territory," and "support[] response efforts to COVID-19 at the Federal, state, local, territorial, and tribal levels." *Id.* at 4. The definition of "conveyance" includes rideshares. *Id.* at 2 n.5.

The CDC issued the order under 42 U.S.C. § 264 and corresponding regulations 42 Fed. Reg. 70.2, 71.31(b), and 71.32(b). *Id.* at 1. Under 42 U.S.C. § 264, the Surgeon General, with the approval of the Secretary of Health and Human Services, has the authority to "make and enforce such regulations as in his judgment are necessary to

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint, [1]; the CDC Order, [20-2]; and the Illinois Executive Order (EO21-14), [17] at n.9.

3

prevent the introduction, transmission, or spread of communicable diseases … from one State … into any other State." 42 U.S.C. § 264(a).

Justin Mahwikizi is a rideshare driver in Illinois. [1] ¶ 44.[2] He alleges that the mask mandate violates his Free Exercise and Free Speech rights. *Id.* ¶ 8. He says the mandate requires him to leave maskless passengers on the side of the road in violation of Christian teachings about the Good Samaritan, *id.* ¶¶ 8–13, and that his act of accepting maskless passengers is a form of speech. *Id.* ¶ 8.

Mahwikizi filed a complaint seeking a declaratory judgment that the CDC mandate violates his constitutional rights, [1] at 20, and requesting that I enjoin enforcement of the mandate against him specifically (not all enforcement of the mandate), *id.* at 22.[3] Mahwikizi also filed a motion for a temporary restraining order and preliminary injunction, requesting that I preliminarily enjoin the CDC, Department of Health and Human Services, Illinois Department of Public Health, and Governor Pritzker from enforcing the CDC mandate against him. [5] ¶ A. The state moved to dismiss the complaint, [17], arguing, among other things, that Mahwikizi lacks standing. *Id.* at 5–7. It did not file a response to the motion for a TRO and preliminary injunction, but I allowed its motion to dismiss to also serve as

---

[2] Most of the paragraphs in the complaint are not labeled. For those that are, I have used paragraph numbers. Otherwise, I have used page numbers.

[3] Mahwikizi does not explicitly ask for an injunction against the state. Instead, he asks that I enjoin "HHS, CDC, or anyone the under the Agencies' authorities [sic]" from enforcing the mandate. [1] at 22. But because he is bringing this suit against the state and refers to the state's enforcement of the mandate throughout his complaint, I read his complaint as also requesting that the state be enjoined from enforcing the mandate against him. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (courts must "construe pro complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers).

its response. [18]. The CDC responded in opposition to the motion for a TRO and preliminary injunction, [20], but has not responded to the complaint. It says that plaintiff did not properly serve the federal defendants under Fed. R. Civ. P. 4(i)(1) and (2) and its opposition to the motion "does not constitute an appearance or a responsive pleading." *Id.* at n.1.

## III.  Analysis

### A.  Standing

To survive the state's 12(b)(1) motion, Mahwikizi must show that 1) he has suffered an injury in fact, 2) that injury was likely caused by the state, and 3) a ruling enjoining the state from enforcing the CDC mandate will likely redress Mahwikizi's injury. *See Silha*, 807 F.3d at 173.

Illinois argues that Mahwikizi can't show causation or redressability vis-à-vis the state because Illinois didn't issue and doesn't enforce the federal mandate. *See* [17] at 5–7. But Mahwikizi says that Governor Pritzker incorporated the CDC mandate into Executive Order 2021-14. *See* [1] at 4; [24] at 3. The state mandate, he seems to say, is the federal mandate—by enforcing the first, Illinois enforces the second. *See* [24] at 3. This argument rests on a misreading of the relevant executive order.[4] The order states: "All individuals, including those who are fully vaccinated, shall be required to wear a face covering consistent with CDC guidance, including (1)

---

[4] Illinois says Executive Order 2021-14 (which reissued 2021-12) has expired. [17] at 6. But EO 2021-30 re-issued EO 2021-12 (with amendments that are irrelevant here) in its entirety through December 11, 2021. Exec. Order 2021-30, https://coronavirus.illinois.gov/resources/executive-orders/display.executive-order-number-30.2021.html (Nov. 12, 2021).

on planes, buses, trains, and other forms of public transportation." Exec. Order 2021-12 § 2b. But the governor's reference to consistency with CDC guidance is not the same as enforcing the federal mandate. The state has its own mask requirement for users of public transportation. The Executive Order may rely on federal guidance to define its scope, but if the federal mandate went away, the state's would not. The Executive Order, enforced pursuant to state law, is independent from the federal mandate, and in this case, Mahwikizi claims injury only from the federal mandate. This is not a mere quibble, *see* [24] at 3, but an important distinction to understand the dispute that Mahwikizi brings to this court. Because the state does not enforce the federal mandate, but its own, Mahwikizi's alleged injuries from the federal mandate are not traceable to the actions of the state defendants. The complaint does not present a case or controversy against the state defendants.[5]

## B.    The Motion for a Temporary Restraining Order

There is no need for an evidentiary hearing on Mahwikizi's motion for a temporary restraining order. The relevant facts—namely the content of the mask mandate and its application to rideshare drivers—are not disputed, and for purposes

---

[5] Mahwikizi has lawsuits against the state, in state court, related to its pandemic response. Mahwikizi says those suits do not include claims arising under the federal constitution or attacking the federal mask mandate. [24] at 3–4. But the state courts could adjudicate such claims and as a matter of comity and orderly management, it makes good sense for a federal court to abstain from hearing a new dispute between Mahwikizi and the state over mask-mandate enforcement. Mahwikizi has already pursued actions in state court that are more advanced than this one and federal courts should avoid potentially inconsistent judgments. So even if the state caused Mahwikizi's injury or if Mahwikizi's complaint should be read to bring an independent challenge to the state-level mandate, I would abstain from hearing his dispute against the state under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

of this preliminary stage of the case, I accept Mahwikizi's statements as true representations about his religious beliefs and his experience as a rideshare driver.

                1.     *Likelihood of Success on the Merits*

                    a.     <u>Free Exercise</u>

Mahwikizi claims that the CDC mandate violates his free exercise rights by barring him from picking up maskless passengers. [1] ¶¶ 9–10. He says his Catholic faith—and, specifically, the parable of the Good Samaritan—requires him to pick up passengers regardless of whether they are wearing a mask. [1] ¶¶ 4, 6–12. I assume, for the time being, that the mandate does, in fact, interfere with plaintiff's ability to adhere to this religious principle—even though, as the government notes, the mandate does not prevent plaintiff from picking up maskless passengers without charging them. *See* [20] at 6. But even laws that have the "incidental effect of burdening a religious practice," *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 631 (7th Cir. 2007), will pass muster under the Free Exercise Clause if they are neutral and generally applicable. *Id.* (citing *Emp. Div. v. Smith*, 494 U.S. 872, 878–79 (1990), *superseded by statute on other grounds*, 42 U.S.C. § 2000bb-1). A law is not neutral if its object is to "infringe upon or restrict practices because of their religious motivation." *Id.* (quoting *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993)).

To determine the object of a law, courts start with the text, "for the minimum requirement of neutrality is that a law not discriminate on its face." *Lukumi*, 508 U.S. at 533. "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id.* Mahwikizi does not

allege that the mandate refers to any religious practice, nor can I find such a reference. But lack of facial neutrality is not the end of the inquiry because a law can target religion without so boldly admitting to it. For that reason, courts look to other evidence to understand the law's purpose, including the "historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the [act's] legislative or administrative history." *Id.* at 540. Again, Mahwikizi does not point to any evidence suggesting the mandate was passed out of animosity toward religion. The mandate is neutral.

The general applicability requirement bars the government from, in a "selective manner[,] impos[ing] burdens only on conduct motivated by religious belief." *Id.* at 543. General applicability is about what the law's effect in practice reveals about lawmakers' intent. *See id.* at 535. A law that is significantly overinclusive or underinclusive in relation to its stated objective, and whose over- or underinclusiveness disproportionately affects religious activity, looks suspicious. *See id.* at 543–46. With one exception not relevant here, there is no bright-line rule for deciding whether a law is generally applicable.[6] *Id.* at 543. But at a certain point, the lack of fit between the law's stated objective and its application is so great that the law's checkered application can only be explained as a "religious gerrymander[]." *Id.* at 534 (quoting *Walz v. Tax Comm'n of N.Y.C.*, 397 U.S. 664, 696 (1970) (Harlan, J., concurring)).

---

[6] That exception is when the government creates a "formal mechanism for granting exceptions" to the policy. *Fulton v. City of Phila.*, 141 S.Ct. 1868, 1879 (2021). No such mechanism exists here.

The mandate is intended to slow the spread of COVID-19 and decrease the COVID-19 death rate. [20] at 10–11. To do this, it requires people to wear masks "on conveyances and at transportation hubs directly operated by U.S. state, local, territorial, or tribal government authorities." [20-2] at 5. This includes rideshares. *Id.* at 2 n.5. Mahwikizi argues that the policy is "not a neutral law of general application" because, for rideshare drivers like him, "the effect of the [mandate] is continuous daily for every ride request [sic] they have to refuse without the legal opportunity to accept." [1] ¶ 44. Neutrality and general applicability, however, are not about what effect a policy has on religious observers, but instead whether that effect—whatever it is—falls disproportionately on religious observers. Mahwikizi does not point to any evidence suggesting that the law is not generally applicable.

But even a neutral law of general applicability can be subject to strict scrutiny, instead of the less exacting rational-basis review, if the law interferes with more than one constitutional right. *Ill. Bible Colls. Ass'n v. Anderson*, 870 F.3d 631, 641 (7th Cir. 2017). Mahwikizi says the mandate does just that. *Id.* ¶ 38. He says it interferes with both his Free Exercise and Free Speech rights, and is thus the sort of hybrid claim contemplated by the Court in *Employment Division v. Smith*, 494 U.S. 872, 882 (1990). But "a plaintiff does not allege a hybrid rights claim entitled to strict scrutiny analysis merely by combining a free exercise claim with an utterly meritless claim of the violation of another alleged fundamental right." *C.L. for Urban Believers v. City of Chi.*, 342 F.3d 752, 765 (quoting *Miller v. Reed*, 176 F.3d 1202, 1208 (9th Cir. 1999)). Because Mahwikizi's free speech claim cannot succeed (an issue addressed

below), he cannot tether it to his free exercise claim in order to invoke strict scrutiny. His Free Exercise claim is instead subject to rational-basis review.

To survive rational-basis review, a law must only be rationally related to a legitimate government interest. *See Srail v. Vill. of Lisle*, 588 F.3d 940, 946 (7th Cir. 2009). Under rational-basis review, a policy is presumed valid. *Lyng v. International Union*, 485 U.S. 360, 370 (1988). COVID-19 has created an "extraordinary public health emergency." *Elim Romanian Pentecostal Church v. Pritzker*, 2020 WL 2517093, at *1 (7th Cir. 2020). More than 770,000 people in the United States have died from COVID-19, and more than 47 million have been infected. Ctrs. Disease Control & Prevention, *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last accessed Nov. 22, 2021). Community transmission rates are "substantial" or "high" in every state. *Id.* Reducing transmission rates is a legitimate government interest. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2021) ("Stemming the spread of Covid-19 is unquestionably a compelling interest."). And requiring that people wear masks is a rational way to do that. *See, e.g.*, Ctrs. Disease Control & Prevention, *Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

Mahwikizi seems to argue that the CDC mandate cannot survive even rational-basis review because, while it allows vaccinated people to go unmasked, it requires unvaccinated people who have gotten COVID-19 to remain masked. [1] at 3.

(referring to the "CDC's confusing announcement that unvaccinated people are free to do what they want [sic], but unvaccinated people are still held under the restrictive activity bans including mask wearing" and arguing that the CDC "is effectively saying that vaccine induced [sic] antibodies is [sic] superior to natural immunity induced [sic] antibodies"); *see also* [27-1] (exhibit showing the CDC had no records responsive to plaintiff's FOIA request for evidence that immunity via infection is "inferior" to immunity via vaccine). But the CDC mandate contains no such exception; it explicitly states that it applies to both vaccinated and unvaccinated people. [20-2] at 8–9. It does not distinguish, much less irrationally distinguish, between the vaccinated and the unvaccinated-but-previously-infected. Mahwikizi cannot show that he's likely to succeed on the merits of his free exercise claim.

<u>b.</u>     <u>Free Speech</u>

Mahwikizi also argues that the "acceptance of service is a form of free speech," and by barring him from accepting maskless passengers, the mandate violates his free speech rights. [1] ¶ 8. The federal government does not respond to Mahwikizi's free speech argument at all. Mahwikizi asks that I take the federal government's "non-defense" of this claim as "confirmation that Defendants allow the point without contest." [21] at 3. The government's forfeiture may have been inadvertent and, although silence may sometimes be a waiver or concession, I can reach my own conclusion about whether Mahwikizi is correct.

Giving rides to maskless passengers isn't speech; it is conduct. And conduct does not suddenly become speech simply because the person engaging in it intends to express an idea. *See United States v. O'Brien*, 391 U.S. 367, 376 (1968). Even

11

accepting that the "alleged communicative element in [Mahwikizi's] conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that [providing services to maskless customers] is constitutionally protected activity." *Id.* That's because regulation of conduct, even when it has an incidental effect on speech, is subject to a less exacting standard than regulation of speech itself. *See id.* As long as the regulation "furthers an important or substantial governmental interest" (an interest that isn't related to suppressing speech) and the incidental restriction on speech isn't greater than necessary to further that interest, the regulation will be upheld. *Id.* at 377. Slowing transmission of COVID-19 is an important government interest, as I explained above. And the mandate's incidental restriction on speech (assuming it has any restriction on speech at all) is not greater than necessary to slow transmission. If, as Mahwikizi argues, the conduct (refusing rides for maskless passengers) is the speech, then the government can only burden speech less by allowing maskless rideshares, which would do nothing to slow transmission.[7] The *O'Brien* standard does not require that drastic action. Mahwikizi isn't likely to succeed on the merits of his free speech claim.

### 2. Irreparable Harm

A plaintiff moving for a preliminary injunction must allege that he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. "[T]he alleged harm need not be occurring or be certain to occur before a court may

---

[7] Mahwikizi also says that maskless rides pose no threat to COVID-19 transmission because rideshare drivers keep their windows down, so the ride "has the full effect of being outdoors walking on the street." [1] at 4. But he offers no evidence for this argument, which doesn't account for the realities of cold-weather driving in Chicago.

grant relief," but "there must be more than a mere possibility that the harm will come to pass." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011) (citations omitted).

Mahwikizi claims that he has already had to turn away at least one customer who didn't wear a mask. [1] ¶ 13. (Mahwikizi does not say whether he asked this customer to wear a mask and she refused, or whether he never asked her.[8]) I assume, then, that having to turn down passengers is "more than a mere possibility." *U.S. Army Corps*, 667 F.3d at 788. Mahwikizi's problem is that in order to allege irreparable harm, he must first successfully allege harm. He has failed to demonstrate that he is likely to succeed on his Free Exercise and Free Speech claims. Without showing harm to his First Amendment rights, he cannot show irreparable harm to them.

### 3. *Balance of Equities and Public Interest*

In addition to showing that he's likely to succeed on the merits and that he will likely suffer irreparable harm without an injunction, Mahwikizi must show that the balance of harms tips in his favor and an injunction is in the public interest. *Winter*, 555 U.S. at 20. Mahwikizi's alleged harm is a violation of his First Amendment rights. [1] ¶¶ 8–11. I've already explained why that claim is unlikely to succeed. On the other side of the ledger, granting individualized exemptions to people who are nonetheless

---

[8] He says that he "was faced with a situation where he was required by the [mandate] to refuse service to a mother whose children were not wearing masks and were above the age of 2. This would have resulted in the mother and children being left on the side of the road." [1] ¶ 13.

physically capable of wearing masks would significantly undermine the federal government's efforts at curbing transmission of COVID-19.

What's more, an injunction would not benefit the public interest. Enjoining enforcement of the mandate, even against only Mahwikizi and his clients, could lead to more COVID-19 cases. And even if it didn't, it would likely invite similar challenges by individual rideshare drivers, collectively leading to an uptick in transmission rates. Though Mahwikizi only requests individualized relief, this is not just a private suit between him and the government; many people could be affected.

In sum, Mahwikizi has failed to allege that he's likely to succeed on the merits, he cannot establish irreparable harm without establishing any harm, and the balance of equities and public interest tip strongly in the government's favor.

## IV. Conclusion

The state's motion to dismiss, [15]; [16]; [17], is granted, and the state defendants are dismissed without prejudice. The motion for a temporary restraining order and preliminary injunction, [5], is denied. Plaintiff's motion to expedite the decision, [25], is terminated as moot, and plaintiff's motion to supplement the motion, [27], is granted. The Clerk shall terminate the Illinois Department of Public Health and Governor Jay Pritzker as parties in the caption. Plaintiff shall file a status report

explaining whether he has properly served the United States under Rule 4(i) by December 6, 2021, and counsel for the federal government must also file a status report on service by December 13, 2021.

ENTER:

Manish S. Shah
United States District Judge

Date: November 22, 2021