**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JUSTIN MAHWIKIZI,<br><br>Plaintiff,<br><br>v.<br><br>THE CENTERS FOR DISEASE CONTROL AND PREVENTION and THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendants. | No. 21 C 3467<br><br>Judge Manish S. Shah |

**ORDER**

Plaintiff's motion to supplement, [35], is granted. Defendants' motion to dismiss, [31], is granted. The complaint is dismissed with prejudice. Enter judgment and terminate civil case.

**STATEMENT**

Plaintiff Justin Mahwikizi seeks a permanent injunction against the federal government to stop it from enforcing its requirement that people wear masks on public transportation. [1] at 1, 7, 22, 52.[1] Mahwikizi sued the federal and state governments, alleging that the Centers for Disease Control's requirement that people wear masks on public transportation violated his free-speech and free-exercise rights and seeking declaratory and injunctive relief. [1] at 8–9; 14. He moved for a temporary restraining order and preliminary injunction. [5]. I denied that motion and granted the state defendants' motion to dismiss. [28]. The federal defendants now move to dismiss Mahwikizi's complaint against them. [31].

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). His complaint must contain "a short and plain statement" showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). At this stage, I draw all reasonable inferences in the plaintiff's

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings.

favor, disregarding legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

Mahwikizi claims that he cannot follow the Catholic teachings of the Good Samaritan so long as the mask mandate prevents him from picking up maskless passengers. [1] at 8–9. He also says that the act of picking up maskless passengers is speech, infringed upon by the mandate. [1] at 8–9.

I previously held that Mahwikizi was unlikely to succeed on the merits of his free-exercise claim because the mandate is neutral and generally applicable. [28] at 7–11. I also held that he was unlikely to succeed on his free-speech claim because picking up maskless passengers is conduct, not speech. [28] at 11. Both claims were subject to rational-basis review—as opposed to the more exacting strict-scrutiny review Mahwikizi pushed—and both lived up to that standard. Mahwikizi now argues (for the first time, in his response to the government's motion to dismiss) that even if the mandate was rational when implemented, it's not rational today because circumstances have changed. [34] at 7–11. "It is true that where 'a statute [is] predicated upon the existence of a particular state of facts' … its constitutionality 'may be challenged by showing to the court that those facts have ceased to exist.'" *United States v. Moore*, 644 F.3d 553, 556 (7th Cir. 2011) (quoting *United States v. Carolene Products Co.*, 304 U.S. 144, 153 (1938)). But that challenge "will fail where it is even debatable that the classification is rational." *Id.* In other words, even if circumstances around the pandemic have changed, if those circumstances can still rationally justify the mandate, the mandate will be upheld.

That's the case here. More than 945,000 Americans have died from COVID-19, Ctrs. Disease Control & Prevention, *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last accessed Feb. 28, 2022)—175,000 of those deaths have occurred since November 2021, when I denied plaintiff's motion for a TRO and preliminary injunction. *See* [28] at 10. More than 78 million Americans have been infected to date. Ctrs. Disease Control & Prevention, *COVID Data Tracker* (last accessed Feb. 28, 2022). Given that, stemming the spread of COVID-19 remains a legitimate government interest, the standard for rational-basis review. *See Srail v. Vill. of Lisle*, 588 F.3d 940, 946 (7th Cir. 2009). Plaintiff says the government's argument that it has a legitimate interest is undermined by its delay in implementing the mask mandate. [34] at 8. If the government really had a legitimate interest, he implies, it would have implemented the mandate earlier. *See* [34] at 8.[2] I disagree. Failing to act quickly isn't necessarily evidence of ulterior motives or bad faith.

---

[2] He also argues that the timing of the federal government's recent ban on travel from South Africa (implemented after the Omicron variant emerged) was arbitrary because the government rescinded the ban after 30 days. [34] at 8. But plaintiff is only challenging the mask mandate, and the government's use of other, shorter-lived measures to address a global pandemic does not undermine the rationality of the challenged policy.

Plaintiff's main issue, though, is the way the government has tried to stem the spread. *See* [34] at 9–10. He says masks aren't effective, [34] at 8–11—if they were, the virus wouldn't still be spreading, and the former FDA commissioner wouldn't have made comments like, "[A] cloth mask is not going to protect you from a virus that spreads through airborne transmission." [34] at 9. (Never mind that not all masks are cloth masks.) The best way to tackle the virus, plaintiff says, is to "focus on making a myriad of treatments and therapeutics available to the general public and their doctors." [34] at 10. Even assuming that implementing a mask mandate earlier or making other treatments available to the public may have been more rational choices, rational-basis review doesn't require the government to choose the most rational option—only *a* rational option. *See Srail*, 588 F.3d at 946. I previously held that the mandate was a rational way to address the government's interest, [28], and plaintiff hasn't shown that circumstances have changed sufficiently for me to revisit that decision.

On plaintiff's free-speech claim, there's an additional wrinkle. Rational-basis review only applies if picking up maskless passengers is conduct (which I previously found it to be, [28] at 11). But if picking up maskless passengers is speech, some form of heightened scrutiny applies. The exact level of scrutiny depends on whether it's commercial or non-commercial speech. I didn't address the commercial-speech issue in my previous opinion because only the state defendants briefed the issue, *see* [17] at 14, and they were dismissed from the case. [28] at 6. But both parties argue it here. [32] at 5–6; [34] at 2–6.

I adhere to my earlier view that the policy regulates conduct, not speech. [28] at 11. But if speech is at issue, it is commercial speech. Regulations of commercial speech (that isn't misleading and doesn't propose illegal acts) are subject to a form of intermediate scrutiny. *See Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626, 638 (1985); *Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 623–24 (1995). The government must have a substantial interest in regulating the speech and must show that the restriction on speech "directly and materially advances" that interest. *Florida Bar*, 515 U.S. at 624. The regulation must also be "narrowly drawn." *Id.*

The core definition of commercial speech is speech that proposes a commercial transaction, but even that isn't necessary. *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014). Another relevant factor is whether "the speaker has an economic motivation for the speech." *Id.* at 517. And something can be commercial speech even if it contains "discussions of important public issues." *Bd. of Trustees v. Fox*, 492 U.S. 469, 475 (1989) (quoting *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 67–68 (1983)). A rideshare pickup is a proposal for a commercial transaction—a service for a fee. Plaintiff has an economic motivation for picking up maskless passengers on the job. He has religious motivations, too, but those motivations no more convert the act into non-commercial speech "than opening sales presentations with a prayer or a Pledge of Allegiance would convert [the

3

presentations] into religious or political speech." *Id.* at 474–75. If picking up maskless passengers to charge them a fee for a ride is speech, then it is commercial speech. The government's interest in preventing transmission of COVID-19 is substantial, and a rule that decreases the likelihood of spread on public transportation materially advances that interest. The government may be able to advance that interest in alternative ways, but that's beside the point. The "narrowly drawn" requirement "require elimination of all less restrictive alternatives." *Id.* at 478. It only requires that the regulation not "burden substantially more speech than is necessary" to further the government's interest. *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). The regulation meets that standard. The regulation burdens only Mahwikizi's ability to engage in a particular type of commercial transaction. He remains free to verbalize his views, give free off-app rides, and petition the government to change the policy.

Plaintiff's final point, made for the first time in his response to the government's motion to dismiss, is that masks harm children. [34] at 12–13. It is unclear what legal argument he's making, but in any event, he makes it too late. A plaintiff cannot use his response brief to amend his complaint. *Bissessur v. Ind. Uni. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). What's more, plaintiff is not the appropriate person to make this argument (so amendment would be futile). Plaintiffs generally cannot rest their claims to relief on the legal rights or interests of third parties. *Sec'y of State v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 955 (1984). There are some exceptions. For instance, when "enforcement of a restriction against the litigant prevents a third party from entering into a relationship with the litigant (typically a contractual relationship), to which relationship the third party has a legal entitlement (typically a constitutional entitlement)." *U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990). Or when it would be impractical for a party to assert their own rights. *See Joseph H. Munson Co., Inc.*, 467 U.S. at 956; *MainStreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 746–47 (7th Cir. 2007). Neither of these exceptions applies here. Plaintiff's potential passengers aren't constitutionally entitled to a rideshare, nor are they incapable of bringing their own legal challenges.

Finally, plaintiff moves to supplement his briefing with excerpts from a recent Supreme Court opinion. [35]. That opinion, *National Federation of Independent Business v. Department of Labor*, 142 S. Ct. 661, 595 U.S. __ (2022), stayed a rule implemented by the Occupational Safety and Health Administration (OSHA). The rule required workers in businesses with over 100 employees to either get vaccinated or test weekly and wear a mask daily. *Id.* at 662, 664. The Court held that OSHA's mandate likely exceeded the agency's statutory authority because the rule pertained to a risk (contracting COVID-19) that wasn't workplace-specific. *Id.* at 665–66. I grant plaintiff's motion to supplement, but it doesn't support his claim here. The OSHA case is about a specific agency's authority under a specific statute to enact a specific rule. This case doesn't implicate that agency, statute, or rule.

      The complaint does not state a claim for relief because the challenged policy is neutral and generally applicable, not irrational, and does not burden speech (it regulates conduct). Even if the policy regulated Mahwikizi's speech, that speech was at most commercial and the policy survives review under the commercial-speech standard. The policy does not burden substantially more speech than necessary to advance the substantial government interest in mitigating the spread of a potentially lethal virus that continues to infect tens of thousands of Americans every day. The motion to dismiss is granted. Although plaintiffs should ordinarily be given an opportunity to amend a complaint after a first dismissal, here, amendment would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). Mahwikizi has thoroughly explained his position through his briefs, but no plausible claim for relief is apparent from his filings. The complaint is dismissed with prejudice.

ENTER:

Date: March 1, 2022

                              Manish S. Shah
                              U.S. District Judge